O

# United States District Court
# Central District of California

TEKOMA CHANEY,

          Plaintiff,

    v.

TRANSDEV SERVICES INC. et al.,

          Defendants.

Case № 2:24-cv-10761-ODW (AJRx)

**ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT [31] [32] AND IMPOSING SANCTIONS**

## I.     INTRODUCTION

Plaintiff Tekoma Chaney brings this action for labor and civil rights violations against Defendants Transdev Services Inc. and Jamie Ogilvie.  (Notice Removal ("NOR") Ex. A ("Compl."), Dkt. No. 1-1.)  Defendants now move for summary judgment, arguing, in part, that Chaney does not have standing to bring her claims. (Ogilvie Mot. Summ. J. ("OMSJ"), Dkt. No. 31; Transdev Mot. Summ. J. ("TMSJ"), Dkt. No. 32.)  For the reasons below, the Court **GRANTS** the Motions.  Separately, for the reasons below, the Court also **SANCTIONS** Chaney's counsel for his misuse of generative-artificial intelligence without verification. [1]

---

[1] Having carefully considered the papers filed in connection with the Motions and the Court's Order to Show Cause regarding potential sanctions, the Court deemed the matters appropriate for decision without oral argument or a further evidentiary hearing.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15; *Pac. Harbor Cap., Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000).

## II.    BACKGROUND[2]

On March 18, 2019, Chaney began working for Transdev as a bus driver. (TSUF ¶ 5.)[3]   On January 24, 2020, Transdev terminated Chaney's employment. (TSUF ¶ 133.)   In January 2021, Chaney retained legal counsel to pursue potential discrimination and retaliation claims.  (TSUF ¶ 141.)   On January 8, 2023, Chaney filed a civil rights complaint against Transdev and Ogilvie with the California Civil Rights Department.  (TSUF ¶¶ 142–43.)

On June 21, 2023, Chaney filed for bankruptcy in the United States Bankruptcy Court for the Western District of Texas.  (*See* Req. Judicial Notice ISO OMSJ ("RJN") Ex. UU ("Bankr. Dkt."), Dkt. No. 31-13.)   In her bankruptcy petition, Chaney did not disclose any "[c]laims against third parties, whether or not [she] [has] filed a lawsuit," including "employment disputes."  (RJN Ex. VV ("Bankr. Pet.") 18, Dkt. No. 31-13.)[4]

On August 8, 2023, the trustee appointed to Chaney's estate recommended discharge after reporting that "there is no property belonging to the estate" and "no property available for distribution from the estate over and above that exempted by law."  (Bankr. Dkt. 4.)   On August 16, 2023, Chaney filed an amended Form 107 (Statement of Financial Affairs), disclosing that she was party to a pending wrongful termination and discrimination case.   (RJN Ex. WW ("Am. Filings") 16, Dkt. No. 31-13.)[5]   Chaney failed to specify that the claims were against Transdev and

---

[2] The Court derives the factual background, none of which is disputed, from Transdev's Statement of Uncontroverted Facts ("TSUF").   (TSUF, Dkt. No. 32-2; *see* Pl.s' Resp., Dkt. No. 35-4.) Furthermore, as the Court does not rely on any evidence to which Chaney objects, the Court need not resolve Chaney's evidentiary objections.   Finally, the Court references exhibits attached to Ogilvie's Request for Judicial Notice, which the Court **GRANTS**, (Dkt. No. 31-13), because the exhibits are easily ascertainable through official public records searches, *see* Fed. R. Evid. 201(b)(2).

[3] The Court only cites to Transdev's Statement of Uncontroverted Facts as the relevant facts are substantively the same in Ogilvie's Statement.

[4] When citing to the Bankruptcy Petition, the Court cites to the original CM/ECF pagination.

[5] When citing to the Amended Filings, the Court cites to the original CM/ECF pagination.

Ogilvie.  (*See id.*)  On September 28, 2023, the Bankruptcy Court granted discharge of Chaney's bankruptcy.  (RJN Ex. XX ("Discharge"), Dkt. No. 31-13.)

On November 17, 2023, Chaney filed this action, asserting fifteen causes of action against Transdev under California statutory and common law, and one cause of action against both Transdev and Ogilvie for harassment.  (Compl. ¶¶ 60–263.)  On April 9, 2026, the Court granted Transdev's motion for judgment on the pleadings and dismissed several of Chaney's claims as time-barred.[6]  (Order Grant Mot. J. Pleadings 7, Dkt. No. 42.)  Transdev and Ogilvie now each move for summary judgment on the remainder of Chaney's claims.  (TMSJ; OMSJ.)

### III.    LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A disputed fact is "material" where it might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The burden of establishing the absence of a genuine issue of material fact lies with the moving party.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Once the moving party satisfies its initial burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment.  *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see Celotex*, 477 U.S. at 324.  The non-moving party must show that there are "genuine factual issues that . . . may reasonably be resolved in favor of either party."  *Cal. Architectural Bldg. Prods., Inc.*

---

[6] Chaney's remaining claims against Transdev are: (1) disability discrimination (count 6); (2) race discrimination (count 7); (3) association-based disability discrimination (count 8); (4) work environment harassment (also asserted against Ogilvie) (count 9); (5) retaliation (count 10); (6) failure to prevent harassment, discrimination, and retaliation (count 11); (7) failure to provide reasonable accommodation (count 13); (8) failure to engage in good faith interactive process (count 14); and (9) violation of the California Unfair Competition Law ("UCL") (count 15).

*v. Franciscan Ceramics*, *Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S. at 250) (emphasis omitted).  Courts should grant summary judgment against a party who fails to make a sufficient showing on an element essential to her case when she will ultimately bear the burden of proof at trial.  *Celotex*, 477 U.S. at 322–23.

In ruling on summary judgment motions, courts "view the facts and draw reasonable inferences in the light most favorable" to the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotation marks omitted).  Thus, when parties file cross-motions for summary judgment, the court "evaluate[s] each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences."  *A.C.L.U. of Nev. v. City of Las Vegas*, 466 F.3d 784, 790–91 (9th Cir. 2006).  The court considers "each party's evidence, regardless under which motion the evidence is offered."  *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011).  Conclusory, speculative, or "uncorroborated and self-serving" testimony will not raise genuine issues of fact sufficient to defeat summary judgment.  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *Thornhill Publ'g Co. v. GTE Tel. & Elec. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).  Moreover, though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment.  *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

The Court may assume that material facts claimed and adequately supported are undisputed except to the extent that such material facts are (a) included in the opposing party's responsive statement of disputes *and* (b) controverted by declaration or competent written evidence.  C.D. Cal. L.R. 56-4.  The Court is not obligated to look any further in the record for supporting evidence other than what is actually and specifically referenced.  *Id.*

## IV.    DISCUSSION

Transdev and Ogilvie each move for summary judgment on all of Chaney's claims.  (*See generally* OMSJ; TMSJ.)  Specifically, Ogilvie argues that Chaney does not have prudential standing to bring her harassment claim against him because the claim belongs to the bankruptcy trustee appointed to Chaney's estate.  (OMSJ 10–11.)  In its motion, Transdev adopts Ogilvie's analysis and argues that it also applies to all of Chaney's claims against Transdev.  (TMSJ 8.)

"Under the Bankruptcy Code, 'all legal or equitable interests of the debtor in property as of the commencement of a bankruptcy case' belong to the bankruptcy estate created at the debtor's filing of a bankruptcy petition."  *Bercy v. City of Phoenix*, 103 F.4th 591, 594 (9th Cir. 2024).  Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case," including "the debtor's 'causes of action.'"  *Smith v. Arthur Andersen LLP*, 421 F.3d 989, 1002 (9th Cir. 2005) (first citing 11 U.S.C. § 541(a)(1); and then citing *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.9 (1983)).  Once a bankruptcy estate is created, "only the bankruptcy trustee," who is the "representative of the estate and the real party in interest in a suit on the estate's claims, has capacity to sue on the estate's behalf."  *Bercy*, 103 F.4th at 594–95 (citation modified) (citing 11 U.S.C. § 323(a)–(b)).  Debtors lack prudential standing to do so.  *Id.*

The Court starts from a position that the parties do not appear to dispute: as of June 21, 2023, the date that Chaney filed bankruptcy, (*see* Bankr. Dkt.), Chaney's claims belonged to her estate.  There can be no dispute because Chaney's claims in this action stem from conduct that allegedly took place between 2019 and 2020.  (*See* TSUF ¶¶ 5, 133.)  As the claims are based on conduct that occurred before her bankruptcy petition, which Chaney filed in 2023, the claims "belong to the bankruptcy estate."  *Bercy*, 103 F.4th at 595.  Thus, as of the date Chaney filed bankruptcy, only the bankruptcy trustee had standing to bring the underlying claims.

The crux of the parties' dispute is whether the bankruptcy trustee then abandoned Chaney's claims, allowing her to bring this suit.  (Opp'n OMSJ 16–17, Dkt. No. 36; Reply OMSJ 9–10, Dkt. No. 37.)   Under 11 U.S.C. § 554(a), "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." Courts may also consider property abandoned to the debtor where the property is "*scheduled* . . . [and] not otherwise administered at the time of the closing of a [bankruptcy case]."  11 U.S.C. § 554(c) (emphasis added).  If a bankruptcy trustee abandons a particular claim, "the abandonment could constitute the estate's ratification of [the debtor's] lawsuit," allowing the debtor to bring the lawsuit "as if the estate itself had originally commenced the action." *Dunmore v. United States*, 358 F.3d 1107, 1112 (9th Cir. 2004).

Here however, the documentary evidence demonstrates that the trustee did not abandon Chaney's claims.  First, there is no evidence that the trustee expressly abandoned any property after "notice and a hearing" pursuant to 11 U.S.C. § 554(a). It is undisputed that, when the bankruptcy trustee recommended discharge on August 8, 2023, he expressly declared that he found no "property belonging to the estate" and "no property available for distribution from the estate."  (Bankr. Dkt. 4.) It is also undisputed that Chaney had knowledge of the claims at issue here but failed to schedule them for the trustee to evaluate.  (*See* TSUF ¶¶ 5, 133, 141–43 (establishing Chaney's knowledge of her employment dispute claims); Bankr. Pet.) From these undisputed facts, the only reasonable inference the Court can draw is that the bankruptcy trustee did not know of Chaney's pending claims when he recommended discharge.

Chaney attempts to raise a factual dispute by asserting that the "trustee had notice of pending litigation yet certified zero assets, demonstrating his determination that disclosed claims had no value to the estate or were abandoned."  (Opp'n OMSJ 17.)  However, as explained, this assertion runs contrary to the documentary

evidence.  The trustee recommended discharge *prior* to receiving notice of Chaney's pending claims.  (*See* Bankr. Dkt.)  Chaney only amended her petition to add her pending claims *after* the bankruptcy trustee recommended discharge.  (*See id.*)  Thus, the bankruptcy trustee could not have had notice of Chaney's claims, and therefore, could not have abandoned them, prior to the Bankruptcy Court's discharge.  Moreover, Chaney fails to support her assertion with any citation to evidence that could create a material factual dispute.  Thus, the Court disregards this purported factual dispute as unsupported.  *See Keenan v. Allan*, 91 F.3d 1275, 1279 ("[I]t is not our task . . . to scour the record in search of a genuine issue of triable fact.  We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.").  As the bankruptcy trustee did not know of Chaney's pending claims, he could not have expressly abandoned them after notice and a hearing under 11 U.S.C. § 554(a).

Second, Chaney did not "schedule" her claims in her initial bankruptcy petition, meaning that her claims could not have been later abandoned by the bankruptcy trustee under 11 U.S.C. § 554(c).  In her initial bankruptcy petition, Chaney failed to disclose her claims despite clear language asking whether she had any "[c]laims against third parties," including "employment disputes."  (Bankr. Pet. 18.)  Chaney's failure to schedule her claims "on her bankruptcy petition" means that "she is divested of prudential standing to assert that cause of action."  *Neal v. NaturalCare, Inc.*, No. 5:12-cv-00531-DOC (OPx), 2014 WL 346639, at *3 (C.D. Cal. Jan. 30, 2014) (citing *Dunmore*, 358 F.3d at 1112).  Indeed, 11 U.S.C. § 554(c) is clear that courts may consider only scheduled property as abandoned to the debtor.  As Chaney failed to properly schedule her claims prior to the trustee's discharge recommendation, the Court cannot consider her claims to be abandoned by the bankruptcy trustee.  Thus, the bankruptcy trustee, and not Chaney, continues to have standing to bring the claims in this action.

For these reasons, the Court finds that Chaney does not have standing in this action and that summary judgment should be granted against her. *See Bercy*, 103 F.4th at 597 (affirming summary judgment against debtor without prudential standing to pursue her claims).

## V.    SANCTIONS

Unfortunately, the Court must, once again, discuss sanctions related to the use of generative-artificial intelligence ("generative-AI"). After the Court took these matters under submission, Chaney's counsel Gavril T. Gabriel filed a declaration regarding his opposition briefs. (Decl. Gavril T. Gabriel re Pl.'s Opp'n ("Gabriel Decl."), Dkt. No. 43.) In the declaration, Gabriel attempts to improperly rehabilitate his use of certain case law, (*see id.* ¶¶ 3–4, 10), and also attempts to improperly supplement his opposition with additional case law, (*see id.* ¶¶ 7–8). The Court disregards these improper attempts to file a sur-response to Defendants' replies.

However, the subject of this Court's sanctions is what Gabriel attempts to bury in the middle of his declaration. According to Gabriel, he states that "[o]n page 17 of Plaintiff's Memorandum of Points and Authorities in support of her opposition to Defendant James Ogilvie's Motion for Summary Judgment," that "there was an inadvertently made citation to *In re Shubert*, 799 F.3d 1124, 1129 (9th Cir. 2015) for the proposition that 'Property abandoned by a trustee reverts to the debtor.'"[7] (Gabriel Decl. ¶ 5.) While he stated that he meant to cite to a different, real case—with a markedly different case name, reporter, pincite, jurisdiction, and year—Gabriel did not say what became apparent to the Court: *In re Shubert* is not a real case. Instead, the reporter and pincite associated with *In re Shubert* leads to *Cause of Action v. FTC*, 799 F.3d 1108, 1124 (D.C. Cir. 2015), a case that has no bearing on any of the issues presented in this case.

---

[7] Notably, Gabriel raised this issue only after Ogilvie noted in his reply brief that *In re Shubert* was fake. (Reply OMSJ 10.)

After receiving Gabriel's declaration, the Court ordered Gabriel to show cause addressing this citation error.  (Order Show Cause, Dkt. No. 44.)  It also ordered Gabriel to address why he was not forthcoming with his use of generative-AI in his declaration; why the Court should not sanction him for using generative-AI to perform legal research and failing to perform a reasonable inquiry into whether his legal citations are supported; and why the Court should not also sanction him for bad faith misrepresentations to the Court. (*Id.* at 2.)

Gabriel's declaration satisfactorily addresses his use of generative-AI, but not of his bad faith misrepresentations.  (*See* Decl. Gavril T. Gabriel re OSC ("Gabriel OSC Decl."), Dkt. No. 45.)  In an effort to give the Court "a complete and honest answer," Gabriel admits to using LexisNexis+, and its drafting feature called Protégé, to draft portions of the brief. [8]  (*Id.* ¶ 4.)  However, Gabriel does not address why he buried his admission to using generative-AI in what was essentially an improper sur-response.

The Court took Gabriel's declaration under consideration and began preparing this Order.  While considering the parties' papers, the Court noted that *In re Shubert* did not appear just once in Chaney's opposition to Ogilvie's Motion for Summary Judgment, but also appeared *twice* in Chaney's opposition to Transdev's Motion for Summary Judgment.  (Opp'n TMSJ 15–16, Dkt. No. 35.)  Notably, while Gabriel admitted to fabricating *In re Shubert* in Chaney's opposition to Ogilvie's Motion, Gabirel failed to mention, in either his initial declaration or in his response to the Court's Order to Show Cause, that the same, fabricated case also appeared *twice* more in the opposition to Transdev's Motion.

Courts have "the inherent authority to impose sanctions for bad faith, which includes a broad range of willful improper conduct." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001).  This inherent power extends to a full range of litigation abuse

---

[8] Gabriel also addresses his apparent failure to attach a generative-AI disclosure to his oppositions. (*Id.* ¶ 9.iii.)  However, the Court did not begin mandating this certification until after Gabriel filed his oppositions.  Thus, the Court does not consider the lack of a generative-AI disclosure when issuing sanctions.

tactics, such as bad faith conduct or willful disobedience of a court's order. *Id.* Though this power must be exercised with restraint, courts have wide latitude in fashioning appropriate sanctions to fit the conduct. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764–65 (1980). However, courts must make "[a] specific finding of bad faith" before imposing a "sanction under the court's inherent powers." *United States v. Stoneberger*, 805 F.2d 1391, 1393 (1980) (quoting *Roadway Express*, 447 U.S. at 767).

Two overarching factors drive the Court's sanctions order. First, the imposition of sanctions for submitting generative-AI hallucinations is so well-documented at this point that the Court finds the failure to verify citations after using generative-AI rises to the level of bad faith. According to one source, in the United States alone, there have been 915 legal opinions addressing the improper use of generative-AI in the last three years. *See* Damien Carlotin, *AI Hallucination Cases*, https://www.damiencharlotin.com/hallucinations/ (last visited Apr. 26, 2026). Courts in this District have begun ordering heavy sanctions against attorneys caught using fabricated cases generated by AI. *See, e.g.*, *N.Z. v. Fenix Int'l Ltd.*, No. 8:24-cv-01655-FWS (SSCx), 2025 WL 3626155, at *5 (C.D. Cal. Dec. 12, 2025) (ordering $13,000 in sanctions against plaintiffs' counsel for filing briefs containing hallucinated authority). Any attorney diligently fulfilling his or her "duty to keep abreast of the changes in the law and its practice, including the benefits and risks associated with relevant technology," Cal. Rules Pro. Conduct 1.1 cmt. 1, should be aware of the grave peril to which they subject themselves by relying on generative-AI without verification. Thus, Gabriel's failure to verify his citations, despite this knowledge, warrants sanctions for bad faith.

Second, and perhaps more egregious, is Gabriel's apparent attempts to hide his misconduct. In his initial declaration, Gabriel buries his use of fabricated authority between multiple paragraphs of improper sur-responses to Defendants' reply briefs. (*See* Gabriel Decl. (containing eleven paragraphs, only two of which address his

misuse of generative-AI).)  Moreover, Gabriel initially presented the hallucinated case as a mere copy-and-paste error, (*id*. ¶¶ 5–6); only after the Court ordered Gabriel to show cause did Gabriel admit to using generative-AI without verification.  (*See* Gabriel OSC Decl.)  To make matters worse, in neither declaration did Gabriel acknowledge that the fabricated citation appeared twice more in a second brief, separate from the one that Gabriel initially acknowledged.  (*See* Gabriel Decl. ¶ 5 (mentioning only Chaney's opposition to Ogilvie's motion and not Chaney's separate opposition to Transdev's motion).)  Gabriel's multiple and repeated attempts to obfuscate and minimize his generative-AI misuse also warrants sanctions for bad faith conduct.

Monetary sanctions are required to attempt to deter this conduct.  However, the Court is also cognizant that monetary sanctions have proved inadequate deterrence generally, as the submission of fabricated case citations continues to occur throughout the country, on a near-daily basis.  Thus, the Court imposes **$500** in sanctions for Gabriel's use of *In re Shubert* in his opposition to Ogilvie's motion for summary judgment, and **$1,000** in sanctions for each of Gabriel's two uses of *In re Shubert* in his opposition to Transdev's motion for summary judgment, totaling **$2,500**.  The Court also requires Gabriel to file a declaration in every case in which he is an attorney in the Central District of California.  The declaration shall include an explanation of how he used generative-AI to draft his briefing in this case, and shall also detail the Court's bad faith findings made in this order.  For every judge in the Central District before whom Gabriel is not currently appearing, Gabriel shall email his declaration to each judge's chambers email.  The Court finds that this is both necessary and proportionate to deter Gabriel from repeating such conduct, as well as to deter other attorneys from similar conduct in the future.

## VI.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** Transdev's and Ogilvie's Motions for Summary Judgment.  (Dkts. No. 31, 32.)  Judgment shall issue.

The Court also **SANCTIONS** Chaney's counsel **$2,500.00** for bad faith conduct, including using AI-generated and hallucinated caselaw without verification three times, payable to the Court.  Chaney's counsel shall remit payment to the Court no later than **MAY 28, 2026** and shall file proof of payment in this case by that date.  Chaney's counsel shall also file a declaration, no later than **MAY 12, 2026**, in every case in which he is an appearing attorney in the Central District of California.  The declaration shall contain an explanation of how he used generative AI to draft his briefing in this case and of the Court's bad faith findings in this order.  For every judge in the Central District before whom Chaney's attorney is not currently appearing, the Court **ORDERS** him to email the declaration, no later than **MAY 12, 2026**, to each judge's chambers email.  Failure to strictly comply with these orders will result in further disciplinary proceedings, including, but not limited to, contempt proceedings and referral to the California state bar.

**IT IS SO ORDERED.**

April 28, 2026

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

12